**Charles Magness COWDEN, John A. Cowden, and Frederic Eugene Cowden, Plaintiffs–Appellees,**

v.

**SOVRAN BANK/CENTRAL SOUTH, Trustee, Southern Adventist Health and Hospital Systems, Inc., Kentucky–Tennessee Conference Association of Seventh–Day Adventists, Inc., Ernest Smallman, III, Co–Trustee, and C.K. McLemore, Co–Trustee, Defendants–Appellants.**

Supreme Court of Tennessee, at Nashville.

Sept. 16, 1991.

Robert J. Warner, Jr., Davis W. Turner, Nashville, for appellants, Sovran Bank, Tennessee, trustee, and C.K. McLemore, co-trustee.

Douglas E. Jones, Helen S. Rogers, Nashville, for appellant, The Kentucky–Tennessee Conference Ass'n of Seventh–Day Adventists, Inc.

Frederic E. Cowden, Jr., Laura L. Chastain, Nashville, for plaintiffs-appellees.

## OPINION

ANDERSON, Justice.

We granted the defendants' application for permission to appeal in order to determine whether the testator intended a charitable trust to terminate upon the merger of the original-named beneficiary into a successor charitable institution that carries on the same work as the named beneficiary. The plaintiffs' action alleges that a testamentary trust established by the will of William H. Magness (the "testator") had terminated under its terms, and thus reverted to the testator's estate for distribution to the plaintiffs as his heirs at law. Three of the remaining defendants, Sovran Bank, Southern Adventist Health & Hospital Systems, Inc., and Kentucky–Tennessee Conference Association of Seventh–Day Adventists, filed motions for summary judgment, all of which were sustained by the trial court. The plaintiffs dismissed

their claims against the other named defendants by motion.

The Court of Appeals reversed the trial court and sustained the plaintiffs' motion for summary judgment. Because we find that the testator did not intend that such a merger should terminate the charitable trust, we reverse the judgment of the Court of Appeals and reinstate the summary judgment of the trial court in favor of the defendants.

### FACTS

In April 1928, the testator, William H. Magness, executed his last will and testament. In the will, the testator bequeathed various sums of money to "Commerce–Union Bank of Nashville, Tennessee" (Commerce Union) and its successors as trustee for the benefit of several charities. The will included the following provision:

> Should any one of the charitable or religious institutions named as beneficiary in this will cease to exist or carry on its work, the sum herein given to it or set aside for its benefit shall revert to my estate and go to my heirs, and the trust pertaining to it shall cease.

On December 18, 1934, the testator executed a codicil creating a bequest of $50,000 in trust "for the use and benefit of the Nashville Agricultural and Normal Institute [NANI], a corporation of Madison, Tennessee, the income therefrom to be paid over to it semi-annually to aid it in carrying on its work."

On February 21, 1936, the testator's will and codicil were probated in the County Court of Davidson County, Tennessee. At that time, NANI was operating a non-profit corporation in accordance with its charter of incorporation of August 4, 1905. The general purpose of NANI as set forth in the charter was as follows:

> The founding of an agricultural and normal school and sanitarium at Madison, Tennessee and if desired at other points in the State of Tennessee and elsewhere in the United States of America. For the teaching and training of missionaries, teachers and farmers who are willing to devote at least a certain portion of their lives in unselfish, unremunerative missionary labor for the glory of God, and the benefit of their fellow men. The institution so to be established shall be undenominational and unsecterian, in so far as that any worthy and approved person or persons may be accepted as students. But it shall be secterian [sic] and denominational to the extent that the religious doctrines taught and inculcated shall be those of the Seventh Day Adventist Church.

When the testator's will was probated, NANI was operating a college for the training of missionaries, teachers, and farmers. In addition, NANI operated a medical sanitarium or hospital called Madison Hospital. In 1937, the NANI school was renamed Madison College. There is no indication in the will that the testator intended the bequest to NANI to benefit either the college or the hospital solely.

In 1963, the ownership and operation of Madison College and Madison Hospital were transferred by NANI to the Seventh–Day Adventist church. Madison Hospital became a Southern Conference of Seventh–Day Adventist Institution; Madison Academy, which consisted of a secondary and elementary school (and now a pre-school also), continued to operate under the new ownership of Kentucky–Tennessee Conference of Seventh–Day Adventists. Madison College ceased operation completely in 1964.

On April 10, 1976, the merger of NANI and a non-profit Florida Corporation, the Charlotte Hospital Association, Inc., with Southern Adventist Health and Hospital Systems, Inc. (now Adventist Health System/Sunbelt, Inc.) became effective. Southern Adventist was designated as the surviving corporation. The plan of merger which was adopted by the members of NANI on March 18, 1976, and by its Board of Directors on March 25, 1976, provided, in part, as follows:

### ARTICLE I

On the effective date of the merger, ... NASHVILLE AGRICULTURAL

AND NORMAL INSTITUTE shall merge into SOUTHERN ADVENTIST HEALTH AND HOSPITAL SYSTEM, INC., and *the separate existence of ... NASHVILLE AGRICULTURAL AND NORMAL INSTITUTE shall cease.* SOUTHERN ADVENTIST HEALTH AND HOSPITAL SYSTEM, INC. shall be the surviving corporation and shall continue its existence under Florida law under the name of SOUTHERN ADVENTIST HEALTH AND HOSPITAL SYSTEM, INC.

(Emphasis added.)

NANI failed to notify Commerce Union that it had merged with Southern Adventist. Commerce Union continued to make the semi-annual income distributions payable to NANI, and sent the payments to the former offices of NANI in Madison, Tennessee. The income was directed by that office to the support of Madison Academy.

In mid-November 1980, Commerce Union discovered that NANI had merged into Southern Adventist, but, pursuant to legal advice, Commerce Union continued payment of income from the trust. However, Commerce Union began to make payments directly to Madison Academy.

In May 1988, certain heirs of the testator learned that NANI had merged with Southern Adventist as of April 10, 1976, and requested that the trustee cease payment of income from the trust to Madison Academy and pay the plaintiffs the trust proceeds plus interest from March 1976. Commerce Union refused to comply with that request.

On September 30, 1988, the plaintiffs, Charles Magness Cowden, John S. Cowden, and Frederic Eugene Cowden, filed the petition to terminate the trust and prayed for a judgment for the money on deposit with Commerce Union on the date NANI merged with Southern Adventist plus prejudgment interest. As noted above, based on the foregoing facts, the Court of Appeals reversed the trial court's summary judgment in favor of the defendants and granted summary judgment for the plaintiffs.

## STANDARD OF REVIEW

Summary judgment is rendered in favor of a party upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R.Civ.P. 56.03. No presumption of correctness attaches to decisions granting summary judgments because they involve only questions of law. Thus, on appeal, we must make a fresh determination concerning whether or not the requirements of Tenn.R.Civ.P. 56 have been met. *Hill v. City of Chattanooga,* 533 S.W.2d 311, 312 (Tenn.App.1975). In doing so, we must consider the pleadings and the evidentiary materials in a light most favorable to the motion's opponent, and we must draw all reasonable inferences in the opponent's favor. *Blocker v. Regional Medical Center,* 722 S.W.2d 660 (Tenn.1987); *Poore v. Magnavox Co.,* 666 S.W.2d 48, 49 (Tenn.1984); *Jones v. Home Indemnity Ins. Co.,* 651 S.W.2d 213, 214 (Tenn.1983).

We agree with the courts below that this record presents no genuine issue of material fact. However, we decline to accept the statement of the legal issue as framed by both parties and by the Court of Appeals. The question is not whether, as a matter of Tennessee corporate law, a corporation ceases to exist after a merger. Instead, we think the question presented is whether the testator intended the charitable trust to terminate upon a merger of the named beneficiary into a successor charitable institution which carries on the same work.

## CONSTRUCTION OF A REVERSIONARY CLAUSE IN A WILL CREATING A CHARITABLE TRUST

"The cardinal and basic rule in the construction of wills is that the court shall seek to discover the intention of the testator, and will give effect to it unless it contravenes some rule of law or public policy. That intention is to be ascertained from the particular words used, from the context, and from the general scope and purpose of the instrument." *Bell v. Shannon,* 212 Tenn. 28, 367 S.W.2d 761, 766

(1963). Coincidentally, this is not the first time that provisions of the Magness will have been construed by this Court. In *Commerce Union Bank v. Warren County*, 707 S.W.2d 854 (Tenn.1986), we considered whether a reversionary interest of the Magness heirs was barred by the rule against perpetuities. We made the following observations about the Magness will:

> We note from the beginning that this Will and Codicil demonstrate that the testator carefully planned the disposition of his substantial estate. Seven separate testamentary trusts for the benefit of individuals as well as of various educational, charitable, and religious institutions were created by the instrument.... Throughout the Will and Codicil, the testator revealed that he fully understood and distinguished such concepts as reversionary interests, remainders, conditional bequests, lapse, and residuary disposition to develop a sophisticated scheme for the distribution of his property....
>
> While the bulk of this Will and Codicil is not at issue here, we have remarked on this broad and comprehensive testamentary scheme because of the light it sheds on the testator's intent. Particularly in a case such as this, in which the testator has conceived in detail the disposition of his estate, but also more fundamentally on the general rule regarding the construction of wills, we construe the instrument as a whole to ascertain and give as complete effect to this intent as is possible....

*Id.* at 857–58.

The particular words at issue in this case, "cease to exist or carry on its work," are found in the reversionary clause of the testator's will:

> Should any one of the charitable or religious institutions named as beneficiary in this will *cease to exist or carry on its work,* the sum herein given to it or set aside for its benefit shall revert to my estate and go to my heirs, and the trust pertaining to it shall cease.

(Emphasis added.)

There is no dispute that Southern Adventist, as successor to NANI, continued to "carry on its work." Both parties and both courts below stated the issue, essentially, as whether the merger of NANI into Southern Adventist caused NANI as a matter of law to "cease to exist."

Both parties and the Court of Appeals looked to Tennessee corporate law to determine whether a corporation does or does not "cease to exist" after a merger. The plaintiffs and defendants rely on differing sections of Tenn.Code Ann. § 48–905 (Supp.1976) for their respective arguments of existence and non-existence. The Court of Appeals stated:

> It appears initially that there is a conflict between the literal meaning of sub[sections] (b) and (d) of § 48–905(2).... We hold that subsection 2(b) is controlling on the question of whether NANI ceased to exist.... The facts are clear that NANI's corporate existence ceased when it merged with Southern Adventist in 1976.

The reversionary clause of the testator's will did *not,* however, provide for termination of the charitable trust in the event the beneficiary ceases to exist for purposes of corporate law; and the General Assembly was not considering termination of charitable trusts when it enacted the Business Corporation Act. We hold, therefore, that the question of whether a merger causes a charitable corporation to "cease to exist" for purposes of corporate law, is irrelevant. Rather, the only issue presented in this case is whether this testator intended the charitable trust to terminate upon the merger of NANI with a successor charitable institution which has continued the same work performed by NANI.

Looking first to the four corners of the will, and specifically the reversionary clause, we note that the use of the word "or" by the testator in the phrase "cease to exist or carry on its work" is ambiguous. "The word 'or' has been held as synonymous with 'and' by this Court in a number of cases." *Interstate Life & Accident Ins. Co. v. Gann,* 196 Tenn. 422, 268 S.W.2d 336, 337 (1954) (citations omitted). *See also Canale v. Steveson,* 224 Tenn. 578, 458 S.W.2d 797, 800 (1970); *Saunders v.*

*State*, 208 Tenn. 347, 345 S.W.2d 899, 908–09 (1961) ("The conjunction 'or' is frequently used to connect two thoughts expressing the same idea."). Black's Law Dictionary (4th Ed.1957) says of the word "or": "It is also used to clarify what has already been said, and in such cases, means 'in other words,' 'to-wit,' or *'that is to say.'* " (Emphasis added.)

▇▇▇ The reversionary clause is also ambiguous in that the clause does not explicitly state either that the merger of a beneficiary of a charitable trust shall, or shall not, terminate the trust. *See, e.g., Eitel v. John N. Norton Memorial Infirmary*, 441 S.W.2d 438 (Ky.1969). Because this is a charitable trust, however, absolute precision is not required to support the validity of the bequest.

> Trusts for charitable uses are highly favored by courts of equity and they will be upheld although the parties to be benefited may not be defined with that precision which would be requisite in trusts of an ordinary and private description....
>
> Uncertainty of the beneficiaries is one of the characteristics of a true, technical, charitable use, because, if the beneficiaries are named with precision, the doctrine applicable to ordinary trusts is sufficient to support it....

*Ratto v. Nashville Trust Co.*, 178 Tenn. 457, 159 S.W.2d 88, 90 (1942) (citations omitted). In the absence of a clear manifestation of the testator's intent, we must apply the foregoing rules in an effort to discern from "the facts and surrounding circumstances at the time of its execution," *Bell v. Shannon, supra*, 367 S.W.2d at 766, the intent of the testator in making the will.

▇▇▇ We need not determine whether the testator intended that any and all mergers of beneficiaries of charitable trusts would terminate any such trust.[1] Some mergers could so alter the character of the purpose of the charity as to violate the testator's intent. Likewise, some mergers could so change the religious denomination of the administrator of the charitable trust as to violate the testator's intent. On the other hand, some mergers could be no more than a mere change of name. If the named beneficiary is designated as the surviving corporation, there would not even be a name change. We need only determine whether this record presents a genuine question of the testator's intent that NANI's merger with Southern Adventist should terminate this charitable trust. If, when viewed in the light most favorable to the plaintiffs, the pleadings and evidentiary materials do not raise a genuine issue of the testator's intent, summary judgment for the defendants is appropriate.

As support for its contention that NANI "ceased to exist" after its merger with Southern Adventist, the plaintiffs' petition asserts that NANI "ceased to perform the functions for which it was originally incorporated." Nowhere is it alleged, however, that the general charitable functions of NANI, as contemplated by the testator, have been discontinued.[2] As a matter of fact, the petition asserts that Madison Academy and Madison Hospital are still operating, and that the trustee has, since 1976, made semi-annual payments of income from the trust directly to Madison Academy. Affidavits from the principal and the registrar of Madison Academy state, and the plaintiffs do not dispute the fact, that Madison Academy now operates on the exact same premises, and in the same buildings, as did NANI.

The general purpose of NANI as set forth in its charter includes "teaching and training" and requires "that the religious

---

1. Tenn.Code Ann. § 48–61–105, dealing with the effect of merger of non-profit corporations, now provides that "the title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment." However, that statute was enacted in 1987 and cannot affect a merger which was completed in 1976.

2. It is true that Madison College ceased operation in 1964, but the plaintiffs do not argue that Madison Academy does not continue the teaching and training objectives of NANI and otherwise "carry on its work."

doctrines taught and inculcated shall be those of the Seventh Day Adventist Church." A quotation from a letter written by the testator which appears in "An Abstract of the History of Madison College," dated August 1953, indicates that the testator was appreciative of the teaching functions of NANI:

It will always give me a great deal of pleasure to do anything I can for you or your institution, for I believe that you have the true philosophy of life, and that you are doing a wonderful work in character building and teaching people how to live mentally, morally, and physically in order to get the best out of life.

As the Court of Appeals noted, there is no indication in the will that the testator intended the bequest to NANI to benefit either Madison College or Madison Hospital solely. Evidently the testator was willing to trust the discretion of NANI in the use of the funds so long as that organization continued to "exist." When we consider that Southern Adventist is the successor to NANI; that the charter of NANI required the teaching of the religious doctrines of the Seventh–Day Adventist Church; that the trustee has continued to apply the income of the trust to the operation of Madison Academy [3]; and that Madison Academy is now operated by the local conference of the Seventh–Day Adventist Church, we agree with the trial court that NANI has not "ceased to exist," that is to say, to "carry on its work."

In *First American Bank v. DeWitt*, 511 S.W.2d 698, 706 (Tenn.App.1972) (aff'd by Supreme Court 1974), the Court of Appeals was asked to interpret the language "cease to exist" in a reversionary clause of a will. In that case, the heirs of the testator asserted that "Protestant Orphanage Foundation, Inc." was not a proper recipient of the residue of the estate bequeathed to the "Trustees of the Protestant Orphanage of Nashville, Tennessee," on the grounds that

on the date of the testator's death, the trustees were not operating an orphanage in Nashville. The Court of Appeals noted that:

Trusts for charitable uses are highly favored by the courts of equity and will be upheld, although the parties to be benefited may not be defined with the precision which would be requisite in trust of an ordinary and private description.

*Id.* at 705. The Court of Appeals held that:

When we consider that the defendant, Protestant Orphanage Foundation, Inc., is really a continuation of the Protestant Orphanage of Nashville, Tennessee, ... we feel that we must agree with the Chancellor in his conclusion that the organization referred to in Dr. DeWitt's will has not ceased to exist....

*Id.* at 706–07. We affirmed.

The plaintiffs argue that *DeWitt* is distinguishable from the present case because *DeWitt* did not involve a merger of a corporation into another corporation, nor was the corporation in *DeWitt* ever pronounced in articles of merger or in the language of a statute as having ceased to exist. Because we have held that the effect of NANI's merger for purposes of Tennessee corporate law is irrelevant to the issue in this case however, we conclude that *DeWitt* cannot be distinguished on these grounds. We find the reasoning of the Court of Appeals in *DeWitt*, which was affirmed by this Court, to be controlling and dispositive of this case. We are not alone.

The author of Annotation, *Corporate Merger—Trusts—Cy Pres*, 34 A.L.R.3d 749, states that:

In keeping with the general principle that charitable trusts are regarded with special favor by the law, and will be upheld wherever possible, courts have usually agreed that the merger ... of a corporation does not bring about the termination of a charitable trust of which

---

**3.** The plaintiffs argue that because Madison Academy is now operated by the Kentucky–Tennessee Conference of Seventh–Day Adventists, instead of the Southern Conference of Seventh–Day Adventists, which is the lawful successor to NANI, the trustee has misapplied the

funds of the trust even if NANI continues to exist. The plaintiffs have no standing, however, to make such an argument. *See, e.g., Carson v. Nashville Bank & Trust Co.*, 204 Tenn. 396, 400, 321 S.W.2d 798, 802 (1958).

the corporation was a beneficiary, provided that the purposes for which the trust was created are not thereby impaired. *Id.* § 2(a) at 751. The *Restatement of Trusts* has also taken the position that, "absent a contrary intent on the part of the settlor, the mere merger or consolidation of a corporate beneficiary should not operate to terminate a charitable trust, and the surviving or resulting corporation should succeed to the interest formerly possessed by its constituent." Annotation, *supra*, 34 A.L.R.3d § 2(a) at 752 (citing *Restatement, Trusts 2d,* § 399).

An appropriate example of the numerous cases from other jurisdictions is *In Re: Hagan's Will,* 234 Iowa 1001, 14 N.W.2d 638 (1944), in which the Supreme Court of Iowa was also asked to interpret the meaning of the words "cease to exist" in a reversionary clause of a will. That court held:

> Clearly, a cause does not cease to exist merely by reason of a change in name....

> Nor, under the circumstances here, has Penn College ceased to exist as an educational institution merely because a distinct corporation has taken over the legal title and business management of the college. Indeed, the very purpose of effecting a nominal change in ownership and operation was to ensure the continued existence of the institution of learning. We think such purpose has succeeded up to this time.

*Id.* 14 N.W.2d at 642.

## CONCLUSION

We have carefully considered the four corners of the testator's will, the general scope and purpose of the instrument, and the circumstances surrounding the bequest, in order to ascertain the intention of the testator. We have considered also that trusts created for charitable purposes are highly favored in the law and will be upheld despite the absence of absolute precision in their creation. We conclude that, when viewed in the light most favorable to the plaintiffs, it is clear that this testator did not intend that the merger of NANI with Southern Adventist should terminate the charitable trust.

For the above-stated reasons, we reverse the judgment of the Court of Appeals and affirm the trial court's order of summary judgment for the defendants. Costs are taxed to the plaintiffs.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.