IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 11, 2000 Session

## MAE BEAVERS, ET AL. v. THE LEBANON DEMOCRAT NEWSPAPER, ET AL.

**Direct Appeal from the Circuit Court for Wilson County
No. 10573;  The Honorable Tom E. Gray, Judge, Sitting by Interchange**

---

**No. M1999-02401-COA-R3-CV - Filed November 30, 2000**

---

This appeal arises from an action initiated by Plaintiffs, Mae and Jerry Beavers, against the Defendant newspaper, the Lebanon Democrat, for libel and slander.  The Beavers' claim arises out of two separate articles published by the newspaper.  The trial court granted the newspaper's motion for summary judgment, holding that the first article was substantially true and the second article was a non-actionable opinion.  The Beavers appeal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Ernest W. Williams, Dana C. McLendon, III, for Appellants

Alfred H. Knight, Alan D. Johnson, for Appellees

### OPINION

Both at the time the underlying action arose and at present, Mae Beavers ("Beavers") was serving as a state representative for the legislative district that includes Wilson County.  Mae Beavers is married to Jerry Beavers, an employee of the United Parcel Service.   The Lebanon Democrat ("Newspaper") is a daily newspaper published in Wilson County.

On or about August 6, 1998, a local police lieutenant named Barry Graves witnessed Beavers and her husband "running with a campaign yard sign" at a polling location around two in the morning.  The lieutenant was off-duty at the time and in the process of placing campaign signs for another candidate.  According to Graves, he could not see what sign Beavers was holding, and he could not say whether it was one of her own, or another candidate's sign.

Following the incident, Newspaper employees contacted Beavers for a comment, and she refuted the allegation.[1] On August 11, 1998, Newspaper again contacted Beavers to inform her of their intention to include the allegation in a political opinion column to be printed the following day. At her request, Beavers was read the article by its author, Clint Brewer. The article included in relevant part:

> The 1998 Wilson County General Election is over and the conspiracy theorists are out in full force. Perhaps it would all be easier to stomach if the folks questioning the vote totals weren't the candidates who got obliterated at the polls. In relation to the Oliver Stone disciples among our field of candidates and would-be public servants, the post-election hangover had brought the typical rash of rumors and innuendo...
>
> Perhaps the most pervasive and irresponsible rumor is that 57th District State Representative Mae Beavers was caught red handed by law enforcement officials stealing campaign signs from a polling place in the wee morning hours. Beavers was very succinct in her defense saying simply, "It is a vicious lie."
>
> Yet Wilson County Sheriff's Department Lieutenant Barry Graves maintains he saw Beavers at 2:00 a.m. on August 5/6 at a polling location off Central Pike accompanied by her husband Jerry Beavers. "We were off putting up some of our signs. We came up the road and saw somebody run toward the parking lot. I know her and her and her husband was on the other side of the road."
>
> Graves added that he did not actually see Beavers or her husband taking any signs though he said Beavers had one in her hand. Graves could also not positively identify which campaign sign Beavers allegedly was holding, "I don't know if something got stopped before it was started," Graves said, adding he was off duty at the time of the alleged incident.
>
> Beavers reiterated her denial that the incident ever took place and said she plans to consult with her attorney regarding Graves' statement. "Nobody saw me and nobody stopped me. It is a complete falsehood," Beavers said.
>
> And though public officials have been caught and charged in the recent past for messing with campaign signs, a survey of offense reports at the Sheriff's Department found no report was filed on the alleged incident involving Beavers.

---

[1] In response to interrogatories submitted to the Beavers after the suit was initiated, they admitted they were present at the polling place in the early morning hours of August 6, 1998. Mae Beavers also admitted to having campaign signs in her possession.

Despite Beavers' objection, the article was published on August 12, 1998. Another article concerning the incident was published on August 17, 1998. The August 17 article was written by Chris Floyd. Although the article did not specifically mention Mae Beavers, the parties acknowledge that it referred to her. The article included the following:

> But what about the behavior that some of our most "respectable" candidates exhibited during the political season? Attacks by proxy, using third parties to do their dirty work; malicious distortions of fact, and character assassination by innuendo; *even the petty act of sign stealing. (In fact, one prominent elected official narrowly escaped arrest for tearing down signs on election eve–and they didn't even have an opponent! It was just sheer personal spite.)*
> (emphasis added)

On September 15, 1998, Beavers served written notice to the newspaper of the "false and defamatory statement" contained in the two articles pursuant to section §29-24-103 of the Tennessee Code.[2] According to Beavers, the newspaper did not publish a "full and fair retraction, correction or apology." Thereafter, the Beavers filed suit against Newspaper[3] for libel and slander in the Wilson County Circuit Court.

Newspaper moved for summary judgment on the Beavers' claim pursuant to Rule 56 of the Tennessee Rules of Civil Procedure. The trial court granted Newspaper's motion, holding the first article was "substantially true" and the second article contained no false defamatory statements,

---

[2]Tenn. Code Ann. § 29-24-103 provides:

(a) Before any civil action is brought for publication, in a newspaper or periodical, of a libel, the plaintiff shall, at least five (5) days before instituting such action, serve notice in writing on the defendant, specifying the article and the statements therein which he alleges to be false and defamatory.

(b)(1) If it appears upon the trial that said article was published in good faith, that its falsity was due to an honest mistake of the facts, and that there were reasonable grounds for believing that the statements in said article were true, and that within (10) days after the service of said notice, or in the next regular edition of said newspaper or periodical, if more than ten (10) days from date of notice, a full and fair correction, apology, or retraction was published in the same editions, and in the case of a daily newspaper, in all editions of the day of such publication, or corresponding issues of the newspaper or periodical in which said article appeared; and in the case of newspapers on the front page thereof, and in the case of other periodicals in as conspicuous a place as that of the original defamatory article, and in either case, in as conspicuous a plat or type as was said original article, then the plaintiff shall recover only actual, and not punitive, damages.

(2) Said exemption from punitive damages shall not apply to any article about or affecting a candidate for political office, published within ten (10) days before any election for the office for which he is a candidate.

[3]The Beavers filed suit against Newspaper, Sam Hatcher (Newspaper's CEO), Clint Brewer, Chris Floyd, and Lieutenant Graves. For purposes of appeal, the Beavers do not pursue the claim against Graves. (see Supp. record) In addition, it appears that the Beavers do not pursue the claim against Brewer.

Beavers did not show malice on the part of its author, and it was a non-actionable "expression of opinion." The Beavers appeal.

## Analysis

As a preliminary matter, we find it appropriate to note that neither party addresses the August 12 article on appeal. Instead, both parties focus solely on the August 17 article and its alleged defamatory qualities. Furthermore, because the August 17 article in no way mentions or refers to Jerry Beavers, we find it unnecessary to discuss his defamation claim. For that reason, our review is limited to Mae Beavers' defamation claim regarding the August 17 article. With the foregoing in mind, we now turn to the appropriateness of the trial court's grant of summary judgment.

Whether the trial court erred in granting or denying a Rule 56 Motion for Summary Judgment is purely a question of law. See TENN. R. CIV. P. Rule 56.04. On review, no presumption of correctness attaches to the trial court's judgment. Therefore, our task is limited to determining whether the requirements for summary judgment have been met. Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991). A Motion for Summary Judgment should be granted only when there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and the moving party is entitled to a judgment as a matter of law on the undisputed facts. Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn.1993); Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn.1991).

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. Byrd, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). With the foregoing in mind, we now turn to the case at bar.

## Defamation

On appeal, the Beavers assert that the August 17 article defamed Mae Beavers, a public official. Newspaper asserts that the article was not defamatory and that it was merely an expression of opinion. The trial court found in favor of Newspaper, holding that the article was non-actionable. For the following reasons, we find that the trial court erred in granting summary judgment on this issue.

First, in analyzing a defamation claim, we must determine whether Ms. Beavers is a public official for purposes of this action. Although the term "public official" has not been specifically defined, it causes us no particular concern. Usually, the title and nature of the office will provide the answer. As the Tennessee Supreme Court stated in Press, Inc. v. Verran, 569 S.W.2d 435 (1978),

The occupant of any position in any branch of government who exercises any public function is subject to the New York Times rule as to all conduct in his official capacity or as to any conduct that might adversely affect his fitness for public office, if he has or appear(s) to the public to have, substantial responsibilities for or control over the conduct of governmental affairs.

Id. at 441.

Accordingly, due to Mae Beavers status as a state representative, we find that she is a public official for purposes of this action.

The seminal case involving a libel action brought by a public official is New York Times Co. v. Sullivan, 376 U.S. 254 (1964). The Supreme Court noted that there is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." See id. at 270. In order to assure that the press will not be hampered in its reporting of official events or conduct, the Supreme Court stated that a public official could not collect damages for a defamatory falsehood related to his official conduct unless the statement was made with "actual malice." Moreover, the Court stated the following:

[t]he constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"– that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

See id. at 279.

In Press, Inc. v. Verran, 569 S.W.2d 435 (Tenn. 1978), our supreme court stated that, "the Supreme Court of the United States has constitutionalized the law of libel and, in material particulars, has preempted state statutory and decisional law in cases and controversies involving the communications media." The court also referred to Article I, Section 19, of the Tennessee Constitution, which states the following:

That the printing presses shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty.

Moreover, in Verran, our supreme court adopted section 580A of the Restatement (Second) of Torts,[4] stating that "[w]e believe that these standards meet the criteria of our federal and state constitutions and we adopt them as the law of this jurisdiction." Verran, 569 S.W.2d at 442.

It is thus clear that a public official may not recover in a defamation action from a media defendant without a showing of "actual malice." Press, Inc. v. Verran, 569 S.W.2d 435, 441 (Tenn. 1978) (citing Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966)). In the context of libel actions, liability is not predicated upon "hatred, spite, ill will, or desire to injure" on the part of the defendant, but only upon the "knowledge of falsity or reckless disregard of the truth" standard. See Old Dominion Br. NO. 496, Nat'l. Ass'n of Letter Carriers. v. Austin, 418 U.S. 264, 281 (1974).

Both in the lower court and on appeal, the Beavers assert that the August 17 article falls within the standard for defamation of a public official. In support of this argument, the Beavers rely on Newspaper's admitted knowledge that the campaign sign incident was a rumor. In addition, the Beavers point out that the very premise of the August 12 article was the "pervasive and irresponsible rumors" surrounding the election. The Beavers argue that by publishing the August 17 article which includes the phrase, "In fact," Newspaper has taken the article out of the realm of mere opinion. Thus, the Beavers attempt to refute both the trial court's holding that there was no showing of actual malice and the holding that the article was non-actionable opinion.

Newspaper claims that it published the August 17 article without actual malice. According to Newspaper, it did not consider the campaign sign incident to be either actually or probably false. In addition, Newspaper claims that the August 17 article was an opinion statement that could neither be proven true nor false.

Based on the standards for defamation and the facts of this case, we find that the grant of summary judgment was not proper. We must view the facts in the light most favorable to the non-moving party, and as such we find that there are genuine issues of material fact regarding whether Newspaper acted with actual malice in publishing the August 17 article and whether the article itself was mere opinion. Specifically, we find that there are material issues of fact regarding whether Newspaper acted with reckless disregard for the truth of the incident. Accordingly, Newspaper was not entitled to judgment as a matter of law and the trial court erred in granting the motion for summary judgment on this issue. Therefore, the decision of the trial court on this issue is hereby reversed and remanded for further proceedings.

---

[4] Section 580A. Defamation of Public Official or Public Figure. One who publishes a false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness or role in that capacity is subject to liability, if, but only if, he (a) knows that the statement is false and that it defames the other person, or (b) acts in reckless disregard of these matters. RESTATEMENT (SECOND) OF TORTS § 580A (1977).

**Conclusion**

For the foregoing reasons, the grant of summary judgment as to the August 12 article and Jerry Beavers' defamation claim is hereby affirmed.  The grant of summary judgment as it pertains to the August 17 article and the defamation claim of Mae Beavers is reversed and remanded for a trial on the merits.  Costs of appeal are taxed one-half to Appellants, Mae & Jerry Beavers, and one-half to Appellee, The Lebanon Democrat Newspaper, for which execution may issue, if necessary.

 

 

_____

ALAN E. HIGHERS, JUDGE