IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 7, 2003 Session

## TRIPLE ROCK, LLC d/b/a COMMERCIAL TEN, ET AL. v.
## A.C. RAINEY, ET AL.

Appeal from the Chancery Court for Davidson County
No. 98-1372-III     Ellen Hobbs Lyle, Chancellor

No. M2000-01115-COA-R3-CV - Filed June 10, 2003

Triple Rock LLC, d/b/a Commercial Ten, Perry Dale, and Earl H. Young, Jr., sued A.C. Rainey and others for damages allegedly resulting from the Defendants' misappropriation, conversion, or negligent handling of moneys allegedly owed to the limited liability company. The trial court granted partial summary judgment in favor of Defendant, Attorney Mark Moore, on his Motion to Dismiss for failure to state a claim. Then, upon Plaintiffs' Motion for Summary Judgment and the response of the remaining Defendants thereto, the trial court entered summary judgment in favor of the Defendants, A.C. Rainey, Miller Kimbrough, MGK Realty, and Mary Snyder. From these two orders Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and W. FRANK BROWN, III, SP. J., joined.

Thomas J. Drake, Jr., Nashville, Tennessee, for the appellant, Tripple Rock, LLC d/b/a Commercial Ten, Perry Dale, and Earl Young, Jr.

John I. Harris, III, Nashville, Tennessee, for the appellees, Albert C. Rainey, Miller Kimbrough, MGK Realty Services, Inc., Gary Lufkin and Q-Change Ltd., LLC.

Jaimee S. Wilson, Murfreesboro, Tennessee, for the appellee, Mark Moore.

### OPINION

This appeal comes to the Court upon review of the grant of two motions for summary judgment.[1] "Since our inquiry involves purely a question of law, no presumption of correctness

---

[1] The trial court viewed Attorney Mark Moore's Motion to Dismiss as a Motion for Summary Judgment under Tennessee Rules of Civil Procedure 56.

attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991)." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); Tenn. R. App. P. 13; *see also Planters Gin Co. v. Federal Compress & Warehouse Co., Inc., et al.*, 78 S.W.3d 885, 889 (Tenn. 2002). The standard of review is well settled. This Court reviews the record *de novo* to determine first whether any genuine issue of material facts exist, and second whether the Defendant is entitled to judgment as a matter of law. As has been noted by our supreme court, summary judgment may be granted to a non-movant. *See Thomas v. Transport Insurance Co.*, 532 S.W.2d 263, 266 (Tenn. 1976). The rendering court, however, must take meticulous care to determine first that the movant had a full and fair opportunity to meet the proposition that there are no genuine issues of material fact and second, that the non-movant is entitled to judgment as a matter of law. *Ibid.* If, on *de novo* review, this Court finds a genuine issue of material fact, by necessity the Defendant is not entitled to a judgment as a matter of law. If no genuine issue of material fact exists, then it falls upon this Court to decide the legal conclusions *de novo* to determine whether the Defendant was so entitled to summary judgment.

The first summary judgment dismissed Triple Rock's claim of negligence against Attorney Mark Moore. The second summary judgment dismissed Triple Rock's claims against A.C. Rainey, Miller Kimbrough, MGK Realty and Mary Snyder. The majority of Triple Rock's claims arise out of two real estate transactions conducted primarily by A.C. Rainey. Triple Rock's claim against Attorney Mark Moore arises out of one of these transactions where Mr. Moore, as attorney for the seller, acted as closing agent on a sale of certain real property in Rutherford County. In addition to these two claims, Triple Rock also alleged that A.C. Rainey breached his fiduciary duty as a member of the member-managed limited liability company by failing to contribute equally to the profit and loss of said company and for failing to account for the funds allegedly misappropriated in these real estate transactions. After unsuccessfully arguing against Mark Moore's motion, the plaintiff's sought summary judgment against the remaining Defendants. The Defendants, A.C. Rainey, et al., urged the trial court to consider its authority under Rule 56 of the Tennessee Rules of Civil Procedure and award summary judgment in favor of the non-moving Defendants. From the trial court's orders of dismissal as to Attorney Mark Moore and summary judgment as to the remaining Defendants, Triple Rock appeals.

I.     THE SUMMARY JUDGMENT IN FAVOR OF THE NON-MOVANTS, A.C. RAINEY, MILLER G. KIMBROUGH, MGK REALTY, SERVICES, INC., GARY LUFKIN AND Q-CHANGE LTD., LLC.

What follows are the undisputed facts concerning the summary judgments entered in this case.

A.     The relationship between Triple Rock LLC, A.C. Rainey and Miller Kimbrough

A.C. Rainey, Earl Young and Perry Dale formed Triple Rock LLC on July 27, 1995. The Company was to engage in the business of buying, selling, managing, leasing, brokering and

investing in real estate properties and such other related business as the members would agree upon. In particular, the operating agreement provided the following:

5. <u>Duration</u> - The Company shall commence operation on July 27, 1995, and shall continue for an indefinite period or otherwise terminate as herein provided.

6. <u>Capital</u> - The initial capital of the Company shall be $ _3,000.00_ . Each Member agrees to contribute cash or property at an agreed valuation as follows:

| Member | Amount | Percent |
|---|---|---|
| Earl Harold Young, Jr. | see schedule A | 33.3% |
| Albert Carl Rainey, Jr. | see schedule A | 33.3% |
| Perry Dale, Jr. | see schedule A | 33.3% |

7. <u>Contribution of Additional Capital</u> - The Members shall contribute additional capital that they may deem to be necessary to the operation of the Company in the following amounts: _____

8. <u>Salaries</u>: - No member shall receive a salary unless otherwise agreed upon by the Members.

9. <u>Loans by Members</u> - If any Member shall advance any moneys to the Company in excess of the Capital contributed as set forth above, the amount of the moneys so advanced shall be considered as a loan to the Company and shall bear interest at the rate of eight percent (8%) until repaid and shall have preference in liquidation over capital account balances.

10. <u>Profits and Losses</u> - The net profits, losses and surplus of the Company shall be divided in proportion to ownership interest of the Members. Any salary paid pursuant to paragraph 8 shall be considered an expense of the business in arriving at net profit or loss.

11. <u>Management</u> - The Members shall participate in the management of the Company's business. Notwithstanding anything herein to the contrary, Earl Harold Young, Jr. shall be responsible for the day-to-day operations of the Company. Earl Harold Young, Jr. shall be designated as the Chief Manager of the Company and Perry Dale, Jr. shall serve as Secretary until such time as they resign from their positions or as otherwise determined by the Members.

. . . .

16. <u>Limitations on Members' Powers/Limitation of Liability</u> - No Member shall, without the majority vote of the other Members:

. . . .

(c) Make, execute or deliver any assignment for the benefit of creditors or any bond, confessions of judgment, chattel mortgage, deed, guarantee, indemnity

bond, surety bond, or contract to sell or contract of sale of all or substantially all the property of the Company.

Subsequent to the original organization of this LLC, the business relationships between the three members began to deteriorate. On August 14, 1997, A.C. Rainey caused the following letter to be delivered to Earl Young and Perry Dale:

> Re: My resignation as an officer and/or Director of Triple Rock, Inc. and LLC d/b/aCommercial Ten (the Company) and the transfer of my affiliate broker's license.

> Dear Perry and Ed:

> After much thought, I have decided that it is in the best interest of myself, the Company and both of you for me to resign any office I currently hold with the Company and to transfer my affiliate broker's license to another firm effective August 18, 1997. As I'm sure you both understand, real estate companies and affiliations come and go and I strongly feel that it is time for me to seek other opportunities.

> I will remain as a stockholder in the Corporation and as a member in the LLC for meantime, and as such stockholder/member I will remain in touch with both of you regarding the financial status of the Company. As we have discussed, any commissions earned while I have been affiliated with the Company will remain with the Company, at least until the indebtedness of the Company to others is retired. In the event the indebtedness is retired, we can then sit down to discuss the affairs and future of the Company.

> I will advise you on where I am transferring my license when that decision is made. I wish both of you and the Company the best of luck in future endeavors. Don't hesitate to contact me if you have any questions regarding this matter.

During his affiliation with Triple Rock, A.C. Rainey began working on a purchase of real property in Rutherford County on behalf of Triple Rock's client, CMC, LLC, from Tom Hogshead. Also in the course of his affiliation with Triple Rock, Rainey began work on a lease between Q-Change, Ltd. and Nippers Corners.

On December 3, 1997, A.C. Rainey faxed the following note to Bert Ferrell at MGK Realty Services, Inc.:

> Bert: The Commission checks on the Hogshead - Matrix sale that comes to this side of the sale should be 40% Commercial Ten, 40% MGK Realty Services, 20% Folk Jordan – Mary Snyder.

-4-

Bert we would like for this to be three separate checks.  Thanks  ACR

This facsimile was then forwarded to Attorney Mark Moore for the purposes of drafting the settlement statement executed March 12, 1998 by representatives of CMC, LLC and Tom Hogshead, and for the drawing of the checks to Commercial Ten, MGK Realty Services and Folk Jordan.

At the time of the closing of the Rutherford County property transaction, Triple Rock owed Libba Rainey, A.C. Rainey's wife, a total of $21,500.00, said sum representing two demand notes executed by Triple Rock with Libba Rainey.  A.C. Rainey endorsed a check in the amount of $1,600.00 from Commercial Ten to his wife, Libba Rainey, allegedly in satisfaction of a portion of Triple Rock's debt.  In exchange for that endorsement, Libba Rainey executed a receipt for those funds.  Likewise, $3,100.00 in commission resulting from the Q-Change lease was endorsed by A.C. Rainey on behalf of Commercial Ten to Libba Rainey.  Libba Rainey executed another receipt which further adjusted the outstanding debt downward accordingly.  After determining that the commissions heretofore thought due Triple Rock were thus directed to Libba Rainey, the Plaintiffs filed suit against A.C. Rainey for conversion of the $3,100.00 in commissions resulting from the Q-Change lease and the $4,000.00 in commission that A.C. Rainey caused to be paid to Miller Kimbrough, Mary Snyder and eventually his wife, Libba Rainey.

For his part, Miller Kimbrough began work as an agent for Triple Rock in 1996.  Though not a member of the member-managed LLC, Mr. Kimbrough's license as a real estate agent listed his affiliation with Triple Rock, LLC.  The record before us shows that in June 1997 Mr. Kimbrough changed his affiliation to establish MGK Realty Services, Inc.  It also appears from the record that Mr. Rainey moved his affiliation to MGK Realty while remaining a member of Triple Rock, LLC.  With regard to the complaint against Mr. Rainey, the Plaintiff sought summary judgment on the following issues:  1) whether Rainey had converted commission due from the Rutherford County sale; 2) whether Rainey had converted the commission from the Q-Change lease; and 3)  Whether Rainey properly shared in the profit and loss of the LLC.  At this point, it is important to note that the Plaintiffs claimed no breach of the operating agreement.  Likewise, they proved no damages resulting from the assignment of the $4,700.00 in commission allegedly converted.  At their core, the claims of the Plaintiffs are that Mr. Rainey improperly delivered into the hands of others $4,000.00 due under the Rutherford County sale commission and $3,100.00 due from the Q-Change, Ltd. lease.  As for Miller Kimbrough and MGK Realty Services, Inc., the same reasoning applies.  Each of these two Defendants, according to the Plaintiffs, "improperly" received $1,600.00 in commissions from the Rutherford County sale.  Said the court:

> The Court has reviewed the record on this issue, including the Operating Agreement of the limited liability company and the relevant statutory provisions, which are identified in the defendants' reply brief.  Based upon the record and applicable statutes the Court finds, as a matter of law, that there was no written agreement among the members of the limited liability company concerning compulsory contributions of additional capital.  The Court therefore finds, as a matter of law, that Rainey, as a member of the limited liability company, has no personal liability to the

company or the other members for any portion of the operating expenses or losses of the limited liability company.

Finally, plaintiffs seek a judgment against Miller Kimbrough. Based upon the record, the Court finds as a matter of law that Kimbrough, and through him, MGK Realty Services, Inc., was entitled to and did receive the appropriate amount of commissions on the Hogshead transaction and further that Kimbrough is not liable under the doctrine of *quantum meruit* to the plaintiffs.

Based upon the foregoing, the Court finds as a matter of law that there are no genuine issues of material fact with respect to the issues in this action and that the defendants, although they are the nonmovants, are entitled to summary judgment at this time in their favor as a matter of law. *See,* Thomas v. Transport Insurance Co., 532 S.W.2d 263, 266 (Tenn. 1976). Accordingly, all claims against defendants Miller Kimbrough and against MGK Realty Services, Inc., are dismissed with prejudice. Furthermore, all claims against A.C. Rainey, with the exception of the claim set forth in Paragraph 3 of the complaint (relating to Q-Change of Nashville), are dismissed with prejudice. As to the claims which are hereby dismissed, the Court finds that these claims are distinct from the issues remaining in this action and therefore that there is no just reason for delay and enters final judgment as to these claims pursuant to Tennessee Rules of Civil Procedure 54.02.

B.      The Nature of the Claim

It is important to note that the Plaintiffs' claims are for conversion. To establish a prima facie case of conversion, the plaintiff must show an appropriation of property to the defendants' own use in exclusion or defiance of the plaintiff owners present possessory rights. *Barger v. Webb*, 216 Tenn. 275, 278, 391 S.W.2d 664, 665 (1965); *Lance Products, Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988).

The drafters of the Restatement place a finer point on this interference and exclusion:
(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

(a) the extent and duration of the actor's exercise of dominion or control;
(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
(c) the actor's good faith;
(d) the extent and duration of the resulting interference with the other's right of control;
(e) the harm done to the chattel;
(f) the inconvenience and expense caused to the other.

Restatement (Second) of Torts § 222A (1965).

The curious nature of the LLC's claims against member A.C. Rainey relies on the allegation that Mr. Rainey, in arranging the payout of the commissions in the Rutherford County sale, and endorsing the $3,100.00 check from the Q-Change lease, applied these funds for his own use and benefit in exclusion of the rights of the LLC and its members. The record before us contains admissions on behalf of the LLC and specifically by member Perry Dale that Libba Rainey held notes against Triple Rock, LLC. It is also undisputed from the record that, if indeed Mary Snyder and Miller Kimbrough worked for the Company, in referring and contributing the perfection of the sale of the Rutherford County property, they would indeed be owed the very percentages paid at Mr. Rainey's direction. The record fails to disclose any appropriation of any portion of the $7,100.00 claimed by Triple Rock, for Rainey's own use or benefit. Furthermore, it is undisputed that Triple Rock received full value of the commission dollars paid toward the note held by Libba Rainey. The Plaintiffs simply argue that since Rainey disposed of these commissions to pay his wife, albeit a legitimate creditor, they did not have the control that they would have preferred. Indeed, the only entities who are arguably dispossessed of the $7,100.00 are the other creditors of the LLC, none of which are parties to this action. As a result, this Court finds no error in the grant of summary judgment against Plaintiffs on conversion. There is no genuine dispute that Mr. Rainey acted as an agent of the limited liability company d/b/a Commercial Ten. There may be a dispute as to the nature and extent of Rainey's actual authority but for the purposes of the Rutherford County Sale and the Nippers Corners Lease there can be no dispute that Rainey was cloaked with the apparent authority of the agent for CMC, et al. and consequently an agent for Triple Rock d/b/a Commercial Ten. As an agent with the authority to enter into agreements on behalf of his principal, Rainey also had the authority necessary to effect his principal's purpose. This includes compensating those agents who accomplished the referral to Commercial Ten. Since those agents received commissions as directed by Rainey, none of those agents acted with the requisite intent to satisfy a claim for conversion.

## II.    CAUSE OF ACTION AGAINST MARK MOORE

The Plaintiffs' claim against Mark Moore began as a bare legal conclusion, i.e. "Attorney Mark Moore improperly paid commissions to MGK Realty Services and Folk Jordan, which commissions were due to Commercial Ten and is liable to Commercial Ten in the amount of $4,000.00." In response to Attorney Moore's Motion to Dismiss filed on June 5, 1998, said Motion being supported by an affidavit and therefore considered as a Motion for Summary Judgment, Plaintiffs asserted the following:

> Mark Moore, attorney, in December of 1997, improperly paid portions of the commission to MGK Realty Services and to Folk Jordan, aiding A.C. Rainey in converting those funds from Commercial Ten. Mark Moore also gave a check made payable to Commer[ci]al Ten, to A.C. Rainey, however, A.C. Rainey at the time was not affiliated with Commer[ci]al Ten. This action sounds in tort, for conversion.

Prior to the entry of an order on Defendant Moore's Motion to Dismiss, the Plaintiffs obtained permission to amend their Complaint.

In the Amended Complaint filed on August 14, 1998, the following is averred as a claim against Moore:

> Attorney Mark Moore was closing agent for a transaction involving Tom Hogshead as seller and CMC, LLC, as buyer. The transaction consisted of the sale of real estate in Rutherford County, by contract. Attorney Mark Moore received funds related to closing the sale of the property, and issued a commission check to MGK Realty Services in the amount of $1,600.00 and to Folk Jordan in the amount of $800.00. The contract provided for commission of $8,000.00 to be paid in equal parts, $4,000.00 each, to Sims Realty and Commercial Ten. (See Exhibit "D") Attorney [M]ark Moore had a duty to all parties to conduct the closing of the transaction according to the contract between the parties, and did not use reasonable care in closing the sale. Attorney Mark Moore closed the transaction by using a contract which was not duly executed and complete. Further, Attorney Mark Moore did not have direction from the parties to the contract to change payment of commission. MGK Realty Services and Folk Jordan were strangers to the transaction.
> In the alternative, the Plaintiffs allege that Attorney Mark Moore conspired with A.C. Rainey in converting the commission to MGK Realty Services and Folk Jordan.
> At all times material, Attorney Mark Moore knew or should have known that Commercial Ten was to be paid $4,000.00 in commission, that Commercial Ten was located in Davidson County, and Attorney Mark Moore knew that A.C. Rainey, or MGK Realty, of Nashville, Tennessee, was not authorized to, but nevertheless sent instructions to pay the commission of $4,000.00, not all to Commercial Ten, but $1,600.00 to MGK Realty and $800.00 to Folk Jordan.
> The Plaintiffs seek $2,400.00 in damages from Attorney Mark Moore.

As a result, Plaintiffs' conclusory allegation in their original complaint metamorphosed into a claim of simple negligence due to Mark Moore's alleged failure to close the Rutherford County transaction according to the contractual papers before him. They specifically allege in their Amended Complaint that the contract under which Attorney Moore was to operate required distribution of $4,000.00 in commission to Triple Rock d/b/a Commercial Ten.

The parties presented the trial court with two versions of the contract for the sale of real property. The Plaintiffs' version of the contact for the sale of the Rutherford County property provided "Sims Realtors, Auctioneers, LLC is to split the commission 50/50 with Commercial Ten with each broker to receive $4,000.00."

This contract was attached to the affidavit of Perry Dale, which states, in pertinent part:

That A.C. Rainey was affiliated with Commer[ci]al Ten as a real estate agent, and while affiliated with Commer[ci]al Ten, was involved in the sale of property in Rutherford County, between Tom [H]ogshead and CMC, LLC. A copy of the Contract for sale of Real Estate is attached hereto as exhibit "A". Commer[ci]al Ten was to have received a portion of the commission in agreement with A.C. Rainey.

The contract is denominated as a contract of sale between Tom Hogshead and CMC, LLC. In the affidavits provided by the Plaintiffs there is no showing that anyone from Triple Rock other than Mr. Rainey dealt with this particular transaction. Despite the assertion in Mr. Dale's affidavit that Mr. Rainey no longer represented Commercial Ten or its alias, Triple Rock LLC, at the time of closing of the Rutherford County transaction, no one, other than Mr. Rainey, had informed Mr. Moore of any of the steps he was to take to enforce the clause requiring Sims Realty, a third party to the agreement, to convey 50% of the commission to Commercial Ten. This fact is interesting insofar as Commercial Ten would not be entitled to any of the commission without Mr. Rainey's efforts on the sale, and on Commercial Ten's behalf. Mr. Moore, in the affidavit supporting his motion, denied any knowledge of the Plaintiff's version of the written contract until after the transaction had already closed. He alleged that he dealt exclusively with A.C. Rainey. Plaintiffs presented no evidence directly contradicting this exclusive dealing.

On appeal, the Plaintiffs argue that the existence of two contracts for sale create a genuine issue of fact material to the question of whether Mark Moore committed "clear and palpable negligence." *Gray v. Boyle Investment Co.*, 803 S.W.2d 678 (Tenn. Ct. App. 1990). They argue that in light of the Western Section's decision in *Gray*, this Court should reverse the trial court's order dismissing their claim. *Gray* involved an attorney who, having received money from the purchasers of real property in connection with closing, failed to inform the purchasers that the property was in foreclosure and took no corrective measures to protect the purchasers' interest. The closing attorney put on no proof in the trial court to rebut the plaintiffs' allegations. To the contrary, he relied upon the plaintiffs' failure to present expert proof of the applicable standard of care. Said the court: "It appears to this court that when an attorney handling a real estate transaction takes money from a purchaser to remit to a seller and, at the time of closing, knows that the property is in foreclosure, but fails to advise purchasers of the foreclosure and takes no corrective measures to protect the purchasers' investment, the attorney is guilty of clear and palpable negligence." *Gray*, 803 S.W.2d at 683-84.

The question remains, however, for the purposes of surviving a motion to dismiss: what constitutes clear and palpable negligence? Understandably, in light of the fact-sensitive nature of the claim, there is no hard and fast rule. Nonetheless, the phrase "clear and palpable negligence" appears throughout this state's case law. *See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, PC*, 813 S.W.2d 400 at 406 (Tenn. 1991); *see also Cleckner v. Dale*, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986).

We find the following to be a proper clarification of the exception sought by the Plaintiffs.

The lawyer standard of care, *except in the most extreme cases*, should be proved using expert testimony.[4]  Likewise, whether the lawyer's conduct in a given case departed from the applicable standard should also be proved by expert testimony.

*Cleckner v. Dale*, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986)(emphasis added)(footnote in original).

The overarching question, however, is whether Mark Moore's actions constitute any breach of duty, much less a breach of such an extreme nature that expert proof of the duty or breach is unnecessary.  The undisputed facts before the trial court establish that there was a disagreement between A.C. Rainey and Triple Rock as to how the commissions from the sale of real property were to have been split among the agents representing those parties.  This dispute did not arise until <u>after</u> Moore had closed the transaction and disbursed the commissions as A.C. Rainey had advised.  Viewing the facts in a light most favorable to the Plaintiffs, A.C. Rainey was still a member of the LLC and at the very least was cloaked with apparent authority; Commercial Ten had no contact with Mark Moore other than through A.C. Rainey.  A.C. Rainey had given certain instructions to Mark Moore regarding the commissions to be paid; the contracts themselves varied as to payee and amount of commission.  And Moore's version of the contract which was used at the closing contained none of the language appearing in the Plaintiff's version.  Nonetheless, the closing statement signed by the purchaser and the seller noted the portions and the payees of the $8,000.00 commission as Miller Kimbrough, Commercial Ten and Folk Jordan.  It bears noting at this point that the claim against Attorney Mark Moore is not for breach of contract.  Likewise, the actual terms of the contract are not at issue as they would be in a claim for breach.  The only question is whether Mark Moore acted unreasonably under these admittedly sketchy circumstances.  We find that there is no genuine issue of material fact without expert testimony from the Plaintiffs establishing the duty and breach as required under *Cleckner*, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986) and *Lazy Seven*, 813 S.W.2d 400 at 406.  We further find that no breach of duty occurred under the undisputed facts as presented.  The summary judgment for Mark Moore was proper.

III.     ACTIONS AGAINST RAINEY FOR BREACH OF FIDUCIARY DUTY AND FAILURE TO CONTRIBUTE TO THE PROFITS AND LOSS.

Plaintiffs argue that the summary judgment of the trial court was not proper on their claim for breach of fiduciary duty and failure to contribute equally to loss and profit.  In this Court's review of the record, we note that each one of the members of the limited liability company had caused money to be borrowed from that member's spouse.  While there are numerous creditors of the LLC, none of those creditors are party to this action.  Likewise, the LLC and the remaining members do not dispute that they received from Libba Rainey a receipt for the full value of the notes paid and can

---

[4]  The standard of care applicable to a particular case will vary depending upon the type of legal activity involved.  The standard of care applicable to civil litigators may not be the same standard applicable to lawyers representing the buyers in a real estate transaction or to lawyers drafting complicated testamentary instruments.  The varied nature of the practice of law underscores the necessity of expert proof intended to acquaint the finder of fact with the applicable standard in each case.

show no loss suffered thereby. It can be argued as Mr. Young stated in his deposition, that the payment over of the $7,100.00 to Libba Rainey might have worked a preference in her favor as against all of the remaining creditors. No present injury has been shown.

As for continuing contributions of additional capital, the LLC's operating agreement as quoted above provides for no additional capital contributions. Pursuant to Tennessee Code Annotated section 48-26-101(a)(3), the operating agreement, if one exists, is required to list those continuing contributions. In keeping with the concept of limited liability as evidenced in Tennessee Code Annotated section 48-26-101, et seq., absent any such requirement, an individual member is shielded from liability for continuing contributions for losses. The fictional entity of the limited liability company is the party responsible for these obligations. As a result the trial court's summary judgment as to breach of fiduciary duty was proper.

The judgment of the court is affirmed. The cause is remanded for further proceedings not inconsistent with this opinion. Costs are taxed against the Appellants for which execution may issue.

_____
WILLIAM B. CAIN, JUDGE