# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 16, 2013 Session

## REID R. CRUMPTON v. PATRICIA G. GRISSOM, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 175161-2     Michael W. Moyers, Chancellor**

**No. E2013-00218-COA-R3-CV - Filed December 23, 2013**

Reid R. Crumpton ("Plaintiff") sued Patricia G. Grissom ("Affiliate Broker"), Ashley Carpenter, and Mary Bea Corbitt ("Managing Broker") in connection with a real estate sales contract for real property containing both a house and a business. The Managing Broker filed a motion for summary judgment asserting, in part, that she was not personally involved in Plaintiff's purchase of the real property at issue and had no knowledge of the details of the transaction, and, therefore, could not be held liable for the actions of the Affiliate Broker. After a hearing, the Trial Court entered an order granting the Managing Broker summary judgment and making its judgment final pursuant to Tenn. R. Civ. P. 54.02. Plaintiff appeals the grant of summary judgment to the Managing Broker. We find and hold that Tenn. Code Ann. §§ 62-13-101, *et seq.* creates a duty on the part of the Managing Broker, and that the Managing Broker failed to show that she met the standard of care sufficient to satisfy her duty. We, therefore, reverse the grant of summary judgment to the Managing Broker, and remand this case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Shannon M. Holland, Knoxville, Tennessee, for the appellant, Reid R. Crumpton.

Ellis A. "Sandy" Sharp, Jon M. Cope, and Zachary B. Tenry, Knoxville, Tennessee, for the appellee, Mary Bea Corbitt.

# OPINION

## Background

In October of 2004, Plaintiff entered into a real estate sales contract with Patsy and Kelly Beeler for Plaintiff to purchase from the Beelers real property in Knoxville, Tennessee containing a house and a business ("Kelly Tire Transaction").[1]  The Affiliate Broker worked with Plaintiff on this transaction.  At that time, the Affiliate Broker worked for Heath Shuler Real Estate, LLC under the supervision of the Managing Broker.

At some point after the closing of the Kelly Tire Transaction, Plaintiff discovered that a five year non-compete clause in an addendum to the real estate sales contract was not contained in all copies of the contract signed by the parties.  Plaintiff sued the Affiliate Broker, the Managing Broker, and Ashley Carpenter, whom Plaintiff asserted was the Affiliate Broker's supervising agent, alleging, as pertinent to this appeal, that the Affiliate Broker had made misrepresentations with regard to the addendum and that the defendants had breached duties owed to Plaintiff pursuant to Tenn. Code Ann. §§ 62-13-101, *et seq*.

The Managing Broker filed a motion for summary judgment supported, in part, by her affidavit in which she stated, in pertinent part:

> 2.  At all relevant times to the above litigation, I was the managing broker for Heath Shuler Real Estate.
> 3.  Patricia Grissom, [sic] was an independent contractor realtor affiliated with the Heath Shuler Real Estate at all relevant times.
> 4.  At no point did I act as an agent or provide real estate services to [Plaintiff] in regards to the Kelly Tire transaction.
> 5.  I was not aware, at any relevant time, of the general substance or the details of the Kelly Tire contract entered into by [Plaintiff].
> 6.  I was not personally involved in [Plaintiff's] purchase of the Kelly Tire business.
> 7.  My duties as managing broker at Heath Shuler Real Estate did not include involvement in the day-to-day activities or review of the routine contracts of independent contractor realtors affiliated with the brokerage.

---

[1]We discuss the facts merely to give context to our resolution of this appeal with the understanding that some of these facts have not yet been proven.

After a hearing the Trial Court entered its order on December 13, 2012 granting the Managing Broker summary judgment after finding and holding that it was undisputed that the Managing Broker had no knowledge of the substance or details of the Kelly Tire Transaction, and that "neither Tennessee statutes nor Tennessee case law suggests that managing brokers' duty to supervise their affiliates can create liability on the part of the managing broker where the managing broker has no direct involvement with or knowledge of the transaction . . . ," and, therefore, the Managing Broker could not be held liable in this case. The Trial Court certified its December 13, 2012 order as final pursuant to Tenn. R. Civ. P. 54.02. Plaintiff appeals the grant of summary judgment to the Managing Broker to this Court.

## Discussion

Although Plaintiff raises multiple issues on appeal, the dispositive issue is whether the Trial Court erred in granting summary judgment to the Managing Broker. Because this case was filed prior to July 1, 2011, we apply the standard of review for summary judgment cases as set out by our Supreme Court as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established

in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

As pertinent to this appeal, Tenn. Code Ann. § 62-13-406 provides:

**62-13-406. Designated broker – Managing broker.** – (a) A licensee entering into a written agreement to represent any party in the buying, selling, exchanging, renting or leasing of real estate may be appointed as the designated and individual agent of this party by the licensee's managing broker, to the exclusion of all other licensees employed by or affiliated with the managing broker. A managing broker providing services under this chapter shall not be considered a dual agent if any individual licensee so appointed as designated agent in a transaction, by specific appointment or by written company policy, does not represent interests of any other party to the same transaction.

(b) The use of a designated agency does not abolish or diminish the managing broker's contractual rights to any listing or advertising agreement between the firm and a property owner, nor does this section lessen the managing broker's responsibilities to ensure that all licensees affiliated with or employed by the broker conduct business in accordance with appropriate laws, rules and regulations.

(c) There shall be no imputation of knowledge or information among or between clients, the managing broker and any designated agent or agents in a designated agency situation.

Tenn. Code Ann. § 62-13-406 (2009).

In *Konop v. Henry*, this Court discussed Tenn. Code Ann. 62-13-406 and managing and affiliate brokers stating:

> As noted earlier, Jason Jent was an affiliate broker hired by the sellers to list their properties for sale; as such, he was required to be supervised by a managing broker who, in this case, was David Jent. *See* Tenn. Code Ann. § 62-13-406(b). David Jent's duty to the purchasers was to ensure that Jason Jent complied with all appropriate laws, rules and regulations. *See* Tenn. Code Ann. § 62-13-406(b) (the duty of a managing broker whose affiliated licensee provides real estate services in a real estate transaction is to ensure that all licensees affiliated with or employed by the broker conduct business in accordance with appropriate laws, rules and regulations); *see also* Tenn. Op. Att'y Gen. No. 96-015, 1996 WL 66988, at *2 (1996) ("The managing or principal broker must fulfill her obligation to ensure that all licensees that she employs carry out their responsibilities ethically and in accordance with the law[,] but the principal broker does not have a specific duty to either the buyer or the seller."). Inasmuch as David Jent was not involved in or did not otherwise provide real estate services in the transactions, he was not obligated under Tenn. Code Ann. § 62-13-403 to disclose his knowledge, if any, of adverse facts.

*Konop v. Henry*, No. M2010-00037-COA-R3-CV, 2010 Tenn. App. LEXIS 526, at **22-23 (Tenn. Ct. App. Aug. 18, 2010), *no appl. perm. appeal filed*.

In *Konop*, this Court was addressing a situation wherein "under Tenn. Code Ann. § 62-13-403, Mr. Jent was obligated to disclose adverse facts of which he had actual notice or knowledge to the purchasers as parties to the transaction." *Id.* at *19. In the case now before us, the scope of the duty alleged to have been breached is less clear. In addition to the duty contained in Tenn. Code Ann. § 62-13-406 quoted above, we note that Tenn. Code Ann. § 62-13-403 sets out duties that brokers owe to all parties in a real estate transaction, and Tenn. Code Ann. § 62-13-404 sets out duties owed to the broker's own client.[2]

In pertinent part, Tenn. Code Ann. § 62-13-403 provides:

**62-13-403. Duty owed to all parties.** – A licensee who provides real estate services in a real estate transaction shall owe all parties to the transaction the

---

[2]We need not, and do not, address all of the potential duties pursuant to Tenn. Code Ann. §§ 62-13-101, *et seq.*, but instead discuss only two specific sections of the statute to illustrate the point.

following duties, except as provided otherwise by § 62-13-405, in addition to other duties specifically set forth in this chapter or the rules of the commission:

(1) Diligently exercise reasonable skill and care in providing services to all parties to the transaction;

(2) Disclose to each party to the transaction any adverse facts of which the licensee has actual notice or knowledge;

(3) Maintain for each party to a transaction the confidentiality of any information obtained by a licensee prior to disclosure to all parties of a written agency or subagency agreement entered into by the licensee to represent either or both of the parties in a transaction. . . .

(4) Provide services to each party to the transaction with honesty and good faith;

(5) Disclose to each party to the transaction timely and accurate information regarding market conditions that might affect the transaction only when the information is available through public records and when the information is requested by a party. [sic]

(6) Timely account for trust fund deposits and all other property received from any party to the transaction; and

(7)(A) Not engage in self-dealing nor act on behalf of licensee's immediate family or on behalf of any other individual, organization or business entity in which the licensee has a personal interest without prior disclosure of the interest and the timely written consent of all parties to the transaction; and

(B) Not recommend to any party to the transaction the use of services of another individual, organization or business entity in which the licensee has an interest or from whom the licensee may receive a referral fee or other compensation for the referral, other than referrals to other licensees to provide real estate services under this chapter, without timely disclosing to the party who receives the referral the licensee's interest in the referral or the fact that a referral fee may be received.

Tenn. Code Ann. § 62-13-403 (2009).

Duties owed to a client by a broker are addressed in Tenn. Code Ann. § 62-13-404, which provides:

**62-13-404. Duty owed to licensee's client.** – Any licensee who acts as an agent in a transaction regulated by this chapter owes to the licensee's client in that transaction the following duties, to:

(1) Obey all lawful instructions of the client when the instructions are within the scope of the agency agreement between licensee and licensee's client;

(2) Be loyal to the interests of the client. A licensee must place the interests of the client before all others in negotiation of a transaction and in other activities, except where the loyalty duty would violate licensee's duties to a customer under § 62-13-402 or a licensee's duties to another client in a dual agency; and

(3)(A) Unless the following duties are specifically and individually waived, in writing by a client, a licensee shall assist the client by:

      (i) Scheduling all property showings on behalf of the client;

      (ii) Receiving all offers and counter offers and forwarding them promptly to the client;

      (iii) Answering any questions that the client may have in negotiation of a successful purchase agreement within the scope of the licensee's expertise; and

      (iv) Advising the client as to whatever forms, procedures and steps are needed after execution of the purchase agreement for a successful closing of the transaction.

(B) Upon waiver of any of the duties in subdivision (3)(A), a consumer shall be advised in writing by the consumer's agent that the consumer may not expect or seek assistance from any other licensees in the transaction for the performance of the duties in subdivision (3)(A).

Tenn. Code Ann. § 62-13-404 (2009).

In its Memorandum and Order incorporated into its December 13, 2012 Order by reference the Trial Court noted that if it accepted Plaintiff's argument that "the misrepresentations and negligence [alleged by Plaintiff] against the affiliate brokers are attributable to the [Managing Broker] pursuant to her duty to supervise the affiliates," the result "would be tantamount to creating strict liability for managing brokers for the negligent or intentional torts of their affiliates." We agree with the Trial Court that our General Assembly did not intend to impose strict liability on managing brokers in cases such as this. On the other hand, we cannot agree with the outcome which would result if we were to hold that by simply and purposefully remaining ignorant of the substance and details of the affiliate broker's transactions, a managing broker could completely escape her statutory duty and any liability. Clearly, neither of these two scenarios is what our General Assembly intended when it enacted Tenn. Code Ann. § 62-13-406. In short, the Managing Broker's liability, if any, does not arise solely from the Affiliate Broker's action but instead arises from a breach of her own statutory duty. Our holding gives effect to all relevant parts of these statutes as enacted by our General Assembly.

The plain and unambiguous language of Tenn. Code Ann. § 62-13-406 provides that a managing broker has the responsibility "to ensure that all licensees affiliated with or employed by the broker conduct business in accordance with appropriate laws, rules and regulations." Tenn. Code Ann. § 62-13-406(b) (2009). Other sections of Tenn. Code Ann. §§ 62-13-101, *et seq.* further delineate the duties owed. Thus, the Managing Broker did owe Plaintiff a duty pursuant to Tenn. Code Ann. §§ 62-13-101, *et seq.* Given the record now before us, however, we are unable to determine the standard of care required of the Managing Broker in order to satisfy her statutory duty.[3]

Plaintiff alleged that the Managing Broker breached her duty to Plaintiff. The Managing Broker produced no evidence showing that she met the standard of care required of a managing broker and, therefore, satisfied her statutory duty. As such, the Managing Broker failed to negate any essential element of Plaintiff's claim, and, therefore, was not entitled to summary judgment. We reverse the grant of summary judgment to the Managing Broker and remand this case to the Trial Court for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with our Opinion and for collection of the costs below. The costs on appeal are assessed against the appellee, Mary Bea Corbitt.

_____
D. MICHAEL SWINEY, JUDGE

---

[3]We note that Plaintiff alleges in his Complaint that the Affiliate Broker represented both him and the sellers in the Kelly Tire transaction. We are unable to determine, given the record now before us, whether the situation in this case involved a dual agency. The answer to this question would, of course, affect the scope of the duty required by both the Affiliate Broker and the Managing Broker.