IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 11, 2010 Session


## DANNY J. PHILLIPS v. WILLIAM T. MULLINS


**Appeal from the Circuit Court for Anderson County**
**No. A8LA0323      Donald R. Elledge, Judge**

_____

**No. E2009-01930-COA-R3-CV - FILED APRIL 26, 2010**

_____


Danny J. Phillips ("Plaintiff") sued William T. Mullins ("Defendant") after a truck driven by Defendant struck and injured Plaintiff who was riding a bicycle. Defendant moved for summary judgment. After a hearing, the Trial Court entered an order granting Defendant summary judgment. Plaintiff appeals to this Court. We reverse the grant of summary judgment finding that there are disputed issues of material fact which preclude summary judgment.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**


D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.


Dail R. Cantrell, Clinton, Tennessee, and Harry L. Lillard, Oak Ridge, Tennessee, for the appellant, Danny J. Phillips.

Terrill L. Adkins, Knoxville, Tennessee, for the appellee, William T. Mullins.

# OPINION

## Background

On February 4, 2008 at approximately 7:01 p.m., Plaintiff was riding a bicycle traveling west on E. Spring Street in Oliver Springs, Tennessee. Defendant was driving a Chevrolet S-10 pickup truck also traveling west on E. Spring Street. It was twilight and weather conditions were wet due to recent rain. Defendant's truck hit Plaintiff's bicycle and Plaintiff suffered injuries, including alleged brain damage, as a result of the accident. Plaintiff has no recollection of the accident. Plaintiff sued Defendant alleging, among other things, that Defendant was 100% at fault for the accident. Defendant filed a motion for summary judgment.

Defendant testified during his deposition that he was traveling 25 miles per hour as he approached what became the accident scene and that his speed was constant and steady. He stated that Plaintiff swerved toward Defendant's truck and was "over towards the center of the road" and only approximately half a car length away from the truck when Defendant first saw him. When asked how far half a car length would be in feet, Defendant stated: "Ten foot." Defendant testified that when he saw Plaintiff, Defendant swerved his truck "[t]owards the left" on to the other side of the road. When asked when the truck and the bicycle came into contact, Defendant replied: "After I served [sic]." Defendant testified that at the time of contact, Plaintiff's bicycle was "[o]n the double line."

John Anthony Sullivan also testified by deposition. Mr. Sullivan testified that he witnessed the accident. Mr. Sullivan testified that in the past he has been arrested for "DUI, reckless driving, a couple of assaults." He further admitted that he also had been arrested for public intoxication and that he had been convicted of a felony as a habitual motor offender. Mr. Sullivan admitted that he has served time in jails or prisons in Cookeville, Roane County, Morgan County, Anderson County, Davidson County, Putnam County, and Williamson County …."

Mr. Sullivan described the accident stating:

Well, when I was coming down east on Spring Street there, I saw [Plaintiff] on the left, I mean, I passed him. And as I went down, probably twenty or thirty foot, twenty foot behind him, there was a truck coming and it was driving fairly fast. And I guesstimated - - I don't know. He was going a lot faster than I was. I was doing about thirty, thirty-five. And as he passed me, I thought to myself, this guy's out of control. He's, you know - - if he ain't careful, he could run over a guy on a bicycle, you know. So I looked in the

rear view mirror, and he hit him.

When asked about Defendant's speed, Mr. Sullivan testified: "He was going faster than I was, is all I know. And he - - I'm going to guesstimate, say, forty, forty-five. I don't know if he was going that fast, but he was doing - - you know, I was doing about thirty, thirty-five." Mr. Sullivan testified: "Well, the truck came up. [Plaintiff] was riding near the white line there. He was on his side of the road, and the truck hit him in the back, in the back wheel." Mr. Sullivan witnessed the accident through his rear view mirror. When asked, Mr. Sullivan admitted that the truck blocked his view of Plaintiff's bicycle briefly.

When asked if he had a Tennessee driver's license at the time he witnessed the accident, Mr. Sullivan testified: "No, sir, I did not. That's the reason I did not go back to the wreck immediately because I - - you can tell by my record, I've been in enough trouble and I've done enough jail time and I'm not interested in doing anymore." When asked if he stopped after seeing the accident, Mr. Sullivan stated: "Right then, I didn't come to a complete stop. But I stopped, I would say, within thirty foot of that and I said, am I going back or not. And with my situation, I said, no, I'm not. I continued on." Mr. Sullivan never contacted the police to inform them that he witnessed the accident.

Mr. Sullivan testified further in his deposition that he saw Plaintiff at the drug store approximately four or five weeks after the accident. He stated:

> I ran into [Plaintiff] at the Rite Aid, which is a drug store in Oliver Springs beside Food City, and asked him how he was. You could see he was on a walker. And I said, well - - and told him that I had witnessed the wreck but I didn't come back, and I told him why. And that's about that, you know.

Mr. Sullivan was asked to view the police report and he testified:

> I don't recall him swerving, sir. I mean - - I mean, into the path of the truck. I don't believe he did that. I mean, you know - - …. It was not raining outside. Well, it had been raining. It was not dark, but it was close. The lights, I don't know about - - a fairly well lit road. He had on dark clothes. And he was transported to the hospital.

Mr. Sullivan also signed an affidavit that stated, in part, that Plaintiff was riding a blue bicycle at the time of the accident and that a photograph attached to the affidavit depicted the bicycle that Plaintiff was riding. This photograph depicts a blue bicycle with damage to the rear wheel.

Officer Paul Douglas Brown, Jr. was dispatched to the accident scene. He testified in his deposition that he arrived on the scene "maybe forty-five seconds to a minute" after the accident and found Plaintiff "laying in the road, halfway off the road, halfway in the road…" to the left when one is facing west. Officer Brown described the conditions at the time of the accident stating:

> It was dark. It wasn't real, real dark. It had just turned dark. It happened at seven o'clock, but it was dark. The street lights were on. It was foggy, but not real foggy. It was like the fog had just started. The roads were still slick, but it wasn't raining at the time.

When asked about the lighting, Officer Brown stated: "The street lights, they were lit. The road was lit pretty good, but, you know." Officer Brown further testified that where the accident occurred there was no street light. When asked specifically about the spot where the accident occurred, Officer Brown stated: "It was dark." Officer Brown testified that Plaintiff was wearing dark colored clothing.

Officer Brown was asked about the bicycle and he testified that as best as he could remember the bicycle was red and silver, had no reflectors and "had damage on the front end, like the front wheel and the handle bars …."

Officer Brown testified that he smelled alcohol on Plaintiff's breath when he was speaking to Plaintiff while awaiting the ambulance. When asked how he could tell the difference between an odor of alcohol on a person's clothing and an odor of alcohol on a person's breath, Officer Brown stated: "When somebody's speaking to you, you can smell it. You know, when they're talking, you can smell it coming out. Yeah, there's a difference."

After a hearing on the motion for summary judgment, the Trial Court entered its order on August 26, 2009 finding and holding, *inter alia*:

> It appearing to this Court that the plaintiff has no memory of the accident.

> It further appearing to the Court that according to the plaintiff's counsel there is a discrepancy between purported witness, John Sullivan and the defendant in regard to the speed of the defendant's vehicle being either twenty-five miles per hour or up to forty miles per hour. It further appearing to the Court that according to the plaintiff the defendant had consumed prescribed Oxycontin during the morning of the day of the accident.

It further appearing to this Court that the purported witness, John Sullivan passed the plaintiff and then passed the defendant[']s pickup truck to the point where the defendant's pickup truck was between John Sullivan's vehicle and the plaintiff's bicycle. It further appearing to this Court that when the defendant's pickup truck got between John Sullivan's pickup truck and the plaintiff's bicycle, John Sullivan lost sight of the plaintiff. It further appearing to this Court that when the defendant was half a car length away from the plaintiff which he equated to a distance of ten feet, the plaintiff suddenly swerved to the left in front of him resulting in a collision. It further appearing to this Court that after losing sight of the plaintiff John Sullivan next saw the plaintiff appear out from under the rear of the defendant's pickup truck following the collision, the court viewed these facts in a light most favorable to the non-moving party.

\* \* \*

Based upon a careful and thorough review of the pleadings, depositions, [and] answers to interrogatories contained within the record of this Court and considering that information in a light most favorable to the plaintiff, this Court finds that although there is a disputed issue of fact concerning the speed of the defendant's vehicle and that the defendant had consumed prescription medication, although no evidence regarding the effect of that medication upon the defendant's ability to operate the motor vehicle, and further considering the weather conditions, the undisputed material facts established that the plaintiff cannot prove the essential elements of his claim at trial concerning "causation in fact" and "proximate or legal causation." This Court finds that the undisputed material facts reflect that the plaintiff has no memory of this accident and this Court previously entered an Order prohibiting the plaintiff from testifying concerning how the accident happened based upon his total lack of memory of the same. The undisputed material facts further show that when the defendant's pickup truck got between John Sullivan's pickup truck and the plaintiff's bicycle, John Sullivan lost sight of the plaintiff and did not witness the collision. The further undisputed material facts reflect that as the defendant was a half a car length away from the plaintiff which he equated to ten feet, the plaintiff suddenly and unexpectedly swerved to the left in front of him causing the collision. It is further an undisputed material fact that after John Sullivan lost sight of the plaintiff he next saw the plaintiff come out from under the rear of the defendant's pickup truck. Therefore, it is the opinion of this Court that the plaintiff cannot prove the essential elements of "causation

-5-

in fact" and "proximate or legal cause" and that the trier of fact would be presented with the only explanation of the collision being from the defendant that the plaintiff suddenly and unexpectedly swerved to the left in front of him resulting in the collision.

The Trial Court granted Defendant summary judgment. Plaintiff appeals to this Court.

## Discussion

Although not stated exactly as such, Plaintiff raises two issues on appeal: 1) whether the Trial Court erred in granting Defendant summary judgment; and, 2) whether the Trial Court erred in denying Plaintiff's motion to continue the hearing on the motion for summary judgment.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).
>
> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998),

sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

The Trial Court found that there was "no genuine issue of material fact to support the essential elements of the plaintiff's claim regarding causation in fact and proximate or legal causation as a matter of law." The record on appeal, however, reveals that there are several disputed issues of material fact which could support the essential elements of plaintiff's claim.

For instance, there is a dispute regarding how fast Defendant was traveling. Defendant testified that he was traveling at a steady and constant speed of 25 miles per hour. Mr. Sullivan, however, estimated that Defendant was traveling at a speed of 40 or 45 miles per hour and further stated "I thought to myself, this guy's out of control." The speed at which Defendant was traveling would be material to the issues, among others, of whether Defendant was reckless, or was negligent, or was obeying traffic laws, or was operating his vehicle at a speed greater than posted, or was exercising due care.

The record also reveals a dispute regarding whether Defendant was keeping a proper lookout. The record shows that Defendant testified he did not see Plaintiff until Plaintiff was only approximately ten feet in front of Defendant's truck despite the fact that the road approaching the accident scene was straight for approximately three hundred yards, Defendant had his truck headlights on, and there were street lights on the roadway. Further, there is a dispute regarding whether Plaintiff's bicycle had reflectors or not. Viewing the evidence and all reasonable inferences from it in the light most favorable to the Plaintiff, as we must, particularly the Defendant's own testimony, there is a genuine issue as to why Defendant did not see Plaintiff at all until Defendant's truck was only approximately ten feet away from Plaintiff. The record on appeal also reveals other disputes including where on the

road Plaintiff's bicycle was traveling immediately before the accident.

Our Supreme Court has clearly stated: "Although a trial court may conclude that the plaintiffs' case is not particularly strong, it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 87 (Tenn. 2008).

As there are genuine issues of material fact in dispute in this case, summary judgment is not proper. We, therefore, reverse the Trial Court's August 26, 2009 order granting summary judgment to Defendant.

Plaintiff also raises an issue regarding whether the Trial Court erred in denying Plaintiff's motion to continue the hearing on the motion for summary judgment to allow Plaintiff to take the statements of three additional fact witnesses. The Trial Court heard argument on the motion for summary judgment and granted summary judgment and then, as the Trial Court stated in its order denying the motion to continue, "plaintiff's counsel orally requested that the Court reserve ruling on the Motion for Summary Judgment based upon the Motion for Continuance." The Trial Court entered its order denying the motion for continuance on August 26, 2009, the same day that it entered its order granting summary judgment. As we have reversed the grant of summary judgment, Plaintiff's motion to continue is moot. We need discuss this issue no further.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings. The costs on appeal are assessed against the Appellee, William T. Mullins.

_____
D. MICHAEL SWINEY, JUDGE