IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 8, 2012

## ROY W. KEITH v. MICHAEL J. JACKSON, SR., AND NATA M. JACKSON

**Appeal from the Circuit Court for Greene County**
**No. 11CV439 KTL      Kindall Lawson, Judge**

**No. E2012-01056-COA-R3-CV-FILED-FEBRUARY 22, 2013**

This appeal arises from a dispute concerning a contract for employment. Roy W. Keith ("Keith") sued Michael J. Jackson, Sr.[1] and Nata M. Jackson ("the Jacksons") in the Circuit Court for Greene County ("the Trial Court"), alleging that he was not paid separation payments due to him under an employment agreement. The Jacksons answered the complaint, arguing essentially that Keith waived these payments when he accepted a job in the new corporation. Keith filed a motion for summary judgment, which the Trial Court granted. The Jacksons appeal to this Court. We hold that the Trial Court erred in granting summary judgment as there remained a material controversy regarding whether Keith waived his right to payment under the employment agreement. We vacate the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Vacated;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

Garrett P. Swartwood, Knoxville, Tennessee, for the appellants, Michael J. Jackson, Sr., and Nata M. Jackson.

Mark S. Dessauer, Kingsport, Tennessee, for the appellee, Roy W. Keith.

---

[1]Michael J. Jackson, Sr., filed for bankruptcy. Mr. Jackson obtained a discharge from the United States Bankruptcy Court in November 2012. The Bankruptcy Court subsequently modified the discharge injunction to permit this Court to proceed with and decide this appeal.

# OPINION

## Background

In September 2008, Keith entered into an employment agreement ("the Agreement") with EcoQuest Holding Corporation, Inc.; EcoQuest International, Inc.; and Heartland Select Corporation (collectively, "the Company"). Michael J. Jackson, Sr. and Nata M. Jackson signed the agreement as limited guarantors of the separation payments. EcoQuest was a Greeneville, Tennessee based corporation that sold, among other things, air purification devices and water purification systems. From January 2000 through March 2009, Mr. Jackson was President of EcoQuest. Under the Agreement, Keith was to serve as in-house counsel. Keith received a signing bonus of $90,000 at the time he signed the Agreement. The Agreement contained certain provisions concerning separation payments, which we reproduce in pertinent part:

2. Compensation
   A. Base Salary. During the Term (as defined below), Company shall pay Executive a base salary of One Hundred Eighty Five Thousand, Four Hundred Dollars ($185,400.00 USD) per year ("Base Salary"), payable in arrears in accordance with the Company's standard payroll practices and policies for senior executives. . . .

I. Signing Bonus. Company shall pay Executive a signing bonus in the amount of Ninety Thousand Dollars ($90,000.00 USD), which payment shall be immediately due and payable upon the execution of this agreement . . . .

3. Term. The term of this Agreement shall be for a period of Nine (9) years beginning upon the execution of this agreement and ending nine (9) years thereafter (the "Term") . . . .

4. Termination. This Agreement may be terminated by Company for any of the following events:
   A. Expiration of the Term;
   B. Mutual written agreement between Executive and the Company at any time;
   C. Executive's death;
   D. Executive's disability which renders Executive unable to perform the essential functions of Executive's job even with reasonable accommodation;

E.  For Cause. For this purpose, Cause shall mean a termination by the Company because of any one of the following events:

1.  Executive's extreme, gross negligence or willful, malicious misconduct or fraud that results in material injury to the Company and has not been cured by Executive within thirty (30) days after receipt by Executive of written notice from the Company of such conduct;

2.  Executive's voluntary resignation. For this purpose, a voluntary resignation expressly excludes Executive's resignation for purposes of or on account of ethical or legal obligations to withdraw, conduct of Company which constitutes a constructive termination of Executive's employment within the meaning of Tennessee law, or for any other reason other than in order for Executive to accept other employment.

F.  Without Cause. Without Cause shall mean any termination of employment by the Company which is not defined in sub-sections A-E above.

5.  Company's Post-Termination Obligations . . .

B.  If this Agreement terminates for any reason set forth in sub-section 4.F above, then the Company shall pay Executive (i) all accrued but unpaid wages through the termination date, based on Executive's then current Base Salary, and (ii) Executive's then current Base Salary for the remainder of the Term, to be paid in accordance with the Company's regular payroll practices (collectively referred to herein as "Separation Payments") . . .

\*\*\*

16.  Limited Guaranty. The Limited Guarantors [Michael Jackson and Nata Jackson], each individually, hereby personally guarantee, jointly and severally, the payment of any Separation Payments due and payable to Executive under the terms of this agreement, in an amount equal to Executive's then current Base Salary for a one-year period, reduced by the amount of the Signing Bonus provided for by Section 2.I of this agreement. The Limited Guarantors hereby agree to promptly pay Executive all sums subject to the guarantee of this Section 16, if and to the extent such payments are not paid by the Company when due.

In March 2009, Aerus Holdings, Inc. acquired substantially all the assets of the Company. What happened next is the subject of much dispute in this case. Keith asserts that he was terminated from employment with the Company. The Jacksons allege that Keith, in fact, voluntarily continued his employment with the purchaser of the assets of the Company and that this continued employment was in lieu of the separation payments.

In August 2011, Keith sued the Jacksons in the Trial Court. In his complaint, Keith argued that he was owed separation payments under the Agreement as a result of his alleged termination. The Jacksons answered the complaint, arguing that Keith waived these separation payments when he accepted a job with the new corporation.

In January 2012, Keith filed a motion for summary judgment, together with a statement of undisputed material facts, his affidavit, and a memorandum of law. For their part, the Jacksons filed a memorandum of law opposing Keith's motion for summary judgment. The Jacksons included a response to Keith's statement of undisputed material facts along with their "Concise Statement of Additional Facts," the affidavit of Mr. Jackson, and part of the transcript of Keith's deposition. The Jacksons also filed a motion to amend their answer, which the Trial Court later granted. The Jacksons' amended answer included several affirmative defenses to Keith's claim, such as, among others, waiver, acquiescence, set-off, and accord and satisfaction.

The Trial Court heard Keith's motion for summary judgment in March 2012. In April 2012, the Trial Court entered an order granting Keith's motion for summary judgment and awarding Keith a $95,400 judgment, jointly and severally, against the Jacksons.[2]

## Discussion

We restate the Jacksons' issues as one dispositive issue on appeal: whether the Trial Court erred in granting Keith's motion for summary judgment.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to

_____

[2]In its order, the Trial Court did not state its legal grounds for granting the motion for summary judgment other than saying "the motion...was well taken...."

-4-

determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

Our Supreme Court has stated regarding contract interpretation:

-5-

When we interpret a contract, our role is to ascertain the intention of the parties. The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract. The interpretation of a contract is a matter of law, which we review de novo with no presumption of correctness.

*84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citations omitted).

As this Court explained in *Quebecor Printing Corp. v. L & B Mfg. Co.*, 209 S.W.3d 565 (Tenn. Ct. App. 2006):

In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed.1998)); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am.Jur.2d, *Contracts*, § 245).

This Court's initial task in construing the [contract] ... at issue, as was the Trial Court's, is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id.* Only if ambiguity

-6-

remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id*.

*Quebecor*, 209 S.W.3d at 578.

The Jacksons argue that the Trial Court erred in granting Keith's motion for summary judgment because the defenses asserted by the Jacksons have not been negated by Keith, and, therefore, summary judgment is improper. Namely, the Jacksons assert on appeal that Keith waived his rights under the Agreement by accepting employment with the new corporation in lieu of the separation payments. The Jacksons cite to Tennessee law on the subject of acquiescence and waiver:

> "Acquiescence" has been defined as a conduct from which may be inferred an assent with a consequent estoppel or quasi-estoppel, and also has been described as a quasi-estoppel, or a form of estoppel. An acquiescence to a transaction is a person's tacit or passive acceptance, or an implied consent to an act. Generally, acquiescence as a defense has a dual nature in that, it may on the one hand, rest on the principle of ratification and be denominated an "implied ratification," or, on the other hand, rest on the principle of estoppel and be denominated as "equitable estoppel." The doctrine arises where a person knows or ought to know that he or she is entitled to enforce his or her right to impeach a transaction and neglects to do so for such a time as would imply that he or she intended to waive or abandon his or her right.

> 31 C.J.S. *Estoppel and Waiver* § 175 (2008) (footnotes omitted); *accord Hinton v. Stephens*, No. W2000–02727–COA–R3–CV, 2001 WL 1176012, at *3 (Tenn. Ct. App. Oct. 4, 2001) (citation omitted).

*Crye-Leike, Inc. v. Carver*, No. W2010-01601-COA-R3-CV, 2011 WL 2112768, at *11 (Tenn. Ct. App. May 26, 2011), *Rule 11 appl. perm. appeal denied September 21, 2011.*

The Jacksons argue that summary judgment was inappropriate in this matter as Keith had not negated the defenses asserted, and, furthermore, credibility cannot be determined at this stage. The Jacksons draw attention to certain assertions from Keith's deposition, such as the following:

Q: And you worked on one day for one company and the next day you didn't miss a lick, you went to work for another company?

A: That's correct.

Q: And you didn't miss one paycheck?

A: Well, there was a delay, but for practical purposes, no, you're correct.

Q: For practical purposes you didn't miss one hour's worth of pay, and that was a transition that you acquiesced, you were in agreement with?

A: I went along, yes.

The Jacksons contend that the evidence demonstrates, or at least raises as a disputed issue, that Keith acquiesced to the new situation regarding his employment in lieu of any separation payments, and, that this had the effect of waiving his rights under the Agreement. According to the Jacksons, summary judgment was inappropriate in this case, among other reasons because of disputed material facts.

The Agreement clearly defines the circumstances under which separation payments are to be paid to Keith. We find the Agreement to be unambiguous. This, however, is not dispositive of this case at the summary judgment stage.

We believe that the parties had the power to agree to change that which Keith had been entitled to, the separation payments, so that Keith would receive something else in lieu of the separation payments. Keith's employment with the new corporation in lieu of the separation payments, as the Jacksons argue happened, possibly could give rise to a defense against Keith's claim for separation payments under the contract. There is nothing in the record to suggest that the parties could not have arrived at some agreement whereby Keith would have the same job in the new corporation in lieu of the separation payments due under the Agreement. Such a determination simply cannot be made at this stage as there are disputed material facts relevant to this issue.

In short, there is a genuine issue as to whether the parties agreed that Keith would have his new job with the new corporation in lieu of his separation payments. We, therefore, hold that the Trial Court erred in granting Keith's motion for summary judgment. Accordingly, we vacate and remand this cause to the Trial Court, for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Roy W. Keith.

_____
D. MICHAEL SWINEY, JUDGE